**STATE of Minnesota, Respondent,**

v.

**Pedro JUMPING EAGLE, Appellant.**

No. C8–99–874.

Court of Appeals of Minnesota.

Nov. 23, 1999.

Mike Hatch, Attorney General, St. Paul, MN; and Susan Gaertner, Ramsey County Attorney, Mark Nathan Lystig, Assistant County Attorney, St. Paul, MN (for respondent).

John M. Stuart, State Public Defender, Theodora Gaïtas, Assistant Public Defender, Minneapolis, MN (for appellant).

Considered and decided by CRIPPEN, Presiding Judge, SCHUMACHER, Judge, and DAVIES, Judge.

## OPINION

SCHUMACHER, Judge.

Appellant Pedro Jumping Eagle pleaded guilty to first-degree criminal sexual conduct in 1993 and was sentenced according to the plea agreement. The sentence included a specified prison term in the event of the revocation of Jumping Eagle's probation. In 1999, Jumping Eagle's probation was revoked and the prison sentence was executed, and at this time a mandatory conditional release term was first imposed. Concluding the imposition of the conditional release term did not, under *State v. Garcia*, 582 N.W.2d 879 (Minn. 1998), entitle Jumping Eagle to withdraw his guilty plea, we affirm.

## FACTS

In 1993, Jumping Eagle pleaded guilty, pursuant to a plea agreement, to first-degree criminal sexual conduct. The charges arose from Jumping Eagle's admitted sexual intercourse with the nine-

year-old daughter of the family with whom he was living. The plea agreement provided that in return for Jumping Eagle's plea of guilty, there would be a·joint recommendation from the parties for an upward durational departure to a sentence of 172 months and a downward dispositional departure to a stayed sentence. The agreement also provided that there be no unsupervised contact with minors and no contact with the victim or her family; that Jumping Eagle serve 12 months in the Ramsey County Workhouse with authorization for early release to an inpatient sex offender program; that in the · event Jumping Eagle was not accepted into inpatient treatment Jumping Eagle would not have the right to withdraw his plea and the state agreed to recommend a sentence within the appropriate guidelines box; that if Jumping Eagle was not accepted for inpatient treatment the parties agreed to renegotiate their positions, and finally that if the state "were to seek an executed sentence to prison, that Mr. Jumping Eagle would have the right to withdraw."

The trial court imposed a sentence in accordance with this agreement, imposing a 172–month stayed sentence, 12 months in the county workhouse with the option of early release to an inpatient sex offender program, and 30 years' probation, along with requiring no contact with the victim or her family, no unsupervised contact with minors, and successful completion of the Alpha House sex offender program as a condition of the probation. There was no mention of the mandatory conditional release term required under Minn.Stat. § 609.109, subd. 7(a) (1998) (at time of sentencing, Minn.Stat. § 609.346, subd. 5(a) (1992)). This sentence was both an upward durational departure and a downward dispositional departure from the presumptive Sentencing Guidelines sentence, an 86–month executed sentence.

Jumping Eagle was released to the Alpha House program and remained on probation until early 1998. In May 1998, the trial court continued Jumping Eagle's probation and ordered him to serve 60 days at the county workhouse after a probation violation hearing. In February 1999, Jumping Eagle appeared again before the trial court for violating probation. Jumping Eagle had been terminated from the Alpha House sex offender treatment program. The trial court revoked Jumping Eagle's probation and executed the stayed prison sentence, and at this time imposed a 10–year conditional release term, later reduced to the correct term of 5 years.

Jumping Eagle moved to withdraw his guilty plea after the court imposed the conditional release term. The trial court denied the motion, and Jumping Eagle appeals.

**ISSUE**

Did imposition of the mandatory conditional release term upon the revocation of Jumping Eagle's probation constitute a manifest injustice and entitle Jumping Eagle to withdraw his guilty plea?

**ANALYSIS**

 In postconviction proceedings, the defendant bears the burden of proving by a preponderance of the evidence facts that warrant withdrawal of his guilty plea. Minn.Stat. § 590.04, subd. 3 (1998); *State v. Lopez*, 379 N.W.2d 633, 636 (Minn.App. 1986), *review denied* (Minn. Feb. 14, 1986). On appeal, this court limits its review to determining whether sufficient evidence exists to sustain the trial court's findings. *Perkins v. State*, 559 N.W.2d 678, 685 (Minn.1997). A criminal defendant has no absolute right to withdraw a guilty plea. *Shorter v. State*, 511 N.W.2d 743, 746 (Minn.1994). A defendant may withdraw a guilty plea after sentencing "upon a timely motion and proof to the satisfaction of the court that withdrawal of the plea is necessary to correct a manifest injustice." *Perkins*, 559 N.W.2d at 685 (citation and quotation omitted). A manifest injustice occurs if a guilty plea is not accurate, vol-

untary, and intelligent. *Perkins*, 559 N.W.2d at 688.

■ Jumping Eagle contends that under *Garcia* he is entitled to withdraw his guilty plea. The *Garcia* court concluded that while the trial court could properly amend a sentence imposed pursuant to a plea agreement to include a mandatory conditional release term, such an amendment breached a plea agreement that did not include the conditional release term, and entitled the defendant to withdraw his guilty plea. *Garcia*, 582 N.W.2d at 881–82.

We are convinced, however, that *Garcia* does not control in this case.[1] The plea agreement in the *Garcia* case promised a specific, executed sentence, at the time of the plea agreement. *Garcia*, 582 N.W.2d at 882. In this case, Jumping Eagle's plea agreement did not impose an executed sentence. Rather, the plea agreement provided for sentencing Jumping Eagle to a specific term in prison only if his probation was revoked. It was not until the revocation of the probation actually occurred that Jumping Eagle faced a prison sentence, and it was only at this time that the mandatory conditional release term became relevant. For this reason, *Garcia* does not control, and no manifest injustice

has occurred that would entitle Jumping Eagle to withdraw his guilty plea.

## DECISION

■ Imposition of the mandatory conditional release term upon revocation of Jumping Eagle's probation did not constitute a manifest injustice and does not require that Jumping Eagle be allowed to withdraw his guilty plea.

**Affirmed.**

CRIPPEN, Judge (dissenting).

*Garcia* governs appellant's right to withdraw his plea when imposition of the mandatory conditional release term occurs in spite of a plea agreement that does not provide for it. *See State v. Garcia*, 582 N.W.2d 879 (Minn.1998). The rationale of this precedent permits no distinction between plea agreements that provide for immediate execution of a prison sentence and those that do not. Because *Garcia* dictates a reversal in this case, I respectfully dissent.

---

1. We are aware of this court's decision in *State v. Brown*, No. C5–98–1700, 1999 WL 169397 (Minn.App. Mar.23, 1999), *review granted* (Minn. June 16, 1999). In *Brown*, we held that the later imposition of a conditional release term not mentioned in the plea agreement or sentencing constituted a "manifest injustice" as a matter of law under *Garcia*, and entitled Brown to withdraw his guilty plea. *Brown*, 1999 WL 169397 at *2. This case is factually distinguishable, unpublished, and therefore of no precedential or controlling value.