*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1199**

State of Minnesota,
Respondent,

vs.

Aaron Arnold Lind-Pashina,
Appellant.

**Filed April 4, 2016
Reversed and remanded
Randall, Judge**[*]

Aitkin County District Court
File No. 01-CR-13-1081

Lori Swanson, Attorney General, St. Paul, Minnesota; and

James P. Ratz, Aitkin County Attorney, Stephanie Shook, Assistant County Attorney, Aitkin, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Sharon E. Jacks, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Ross, Presiding Judge; Reyes, Jr., Judge; and Randall, Judge.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**U N P U B L I S H E D   O P I N I O N**

**RANDALL**, Judge

Appellant Aaron Arnold Lind-Pashina challenges the portion of his sentence requiring him to pay three fines and provide a DNA sample, arguing that the district court erroneously imposed these conditions contrary to his plea agreement. We reverse and remand.

## FACTS

In October 2013, Lind-Pashina and two other men tortured their disabled roommate, B.J.B. Lind-Pashina was ultimately charged with four counts of kidnapping, one count of second-degree criminal sexual conduct, and three counts of first-degree assault.

Lind-Pashina and the state entered a plea agreement with Lind-Pashina agreeing to plead guilty to three counts of first-degree assault in exchange for the dismissal of the other five charges. In his plea petition, Lind-Pashina stated that he agreed to plead guilty to the three assault charges in exchange for minimum fines and 271 months in prison. At the plea hearing, the prosecutor stated that the state "would be agreeable to waiving" the presentence investigation, fines, and DNA sample. The district court accepted Lind-Pashina's plea and sentenced him to 271 months in prison. The district court also required Lind-Pashina to pay three fines of $137, $50, and $50 and to provide a DNA sample. Lind-Pashina appeals.

## D E C I S I O N

The "interpretation and enforcement of plea agreements involve issues of law that we review de novo." *State v. Rhodes*, 675 N.W.2d 323, 326 (Minn. 2004). The state "must

2

be held to the promises it made" in a plea agreement. *State v. Brown*, 606 N.W.2d 670, 674 (Minn. 2000) (quotation omitted). To determine "whether a plea agreement was violated, courts look to what the parties to the plea bargain reasonably understood to be the terms of the agreement." *Id.* (quotation omitted). "On demonstration that a plea agreement has been breached, the court may allow withdrawal of the plea, order specific performance, or alter the sentence if appropriate." *Id.*

Lind-Pashina requests specific performance of the plea agreement, which he says included conditions that he would not be sentenced to pay fines or provide a DNA sample. Based on the record before us, we cannot convincingly determine whether the plea agreement contained such conditions. In his plea petition, Lind-Pashina stated that he agreed to plead guilty to the three assault charges in exchange for a *minimum fine* and 271 months in prison. And at the plea hearing, the prosecutor stated that the state "would be agreeable to waiving" the fines and DNA sample, not necessarily that the agreement included such conditions. There is no clear evidence that the plea agreement contemplated the challenged conditions.

Nevertheless, "in close cases, plea agreements should be construed to favor defendants." *In re Ashman*, 608 N.W.2d 853, 858 (Minn. 2000). Lind-Pashina argues that he agreed to plead guilty, in part, because he would not be required to pay fines or provide a DNA sample. Given the record and Lind-Pashina's assertion, we cannot conclude that the terms were not used as an inducement to get Lind-Pashina to plead guilty. We will not honor Lind-Pashina's request that the Minnesota Court of Appeals impose the sentence he wants (without fines and DNA sample). But there is enough in the record to support Lind-

Pashina's claim that he was induced to plead guilty by the state's unfulfilled promise to exclude these conditions from his sentence.

"When a guilty plea is induced by unfulfilled or unfulfillable promises, the voluntariness of the plea is drawn into question." *State v. Wukawitz*, 662 N.W.2d 517, 526 (Minn. 2003). A guilty plea is not valid if it is not entered voluntarily. *State v. Ecker*, 524 N.W.2d 712, 716 (Minn. 1994). Because Lind-Pashina pleaded guilty to felony first-degree assault, Minnesota law required him to pay fines and provide a DNA sample. *See* Minn. Stat. § 609.101, subd. 2 (2012) (requiring the district court to impose a fine when a person is convicted of first-degree assault); Minn. Stat. § 609.117, subd. 1 (2012) (requiring the district court to order a DNA sample when a person is convicted of a felony). "A guilty plea cannot be induced by unfulfilled or unfulfillable promises, including a promise of a sentence unauthorized by law." *Brown*, 606 N.W.2d at 674.

In *State v. Garcia*, the parties agreed to an 81-month sentence without a required term of conditional release. 582 N.W.2d 879, 881-82 (Minn. 1998). The supreme court declined to order specific performance of the plea agreement because it was "unauthorized by law." *Id.* at 882. But because the appellant had entered an agreement that could not be honored, he was entitled to withdraw his guilty plea. *Id.* Alternatively, the appellant could choose "to continue to be bound by the original plea agreement, as amended to include the 10-year conditional release term required by law." *Id.*

As in *Garcia*, Lind-Pashina's requested sentence without the fines and DNA sample would be "illegal because [it would] fail to contain terms that the legislature has mandated." *See id.* at 881. Because any promise to exclude fines and a DNA sample from Lind-

4

Pashina's sentence was unauthorized by law, Lind-Pashina must have an opportunity to choose whether to withdraw his guilty plea. *See id.* at 882 ("[A]n unqualified promise which is part of a plea arrangement must be honored or else the guilty plea may be withdrawn." (quotation omitted)).

As part of his plea agreement, Lind-Pashina pleaded guilty to three counts; five other counts were dismissed. We remand this case to the district court to give Lind-Pashina an opportunity to move to withdraw his guilty plea if he so chooses. *See id.* If he chooses to withdraw his guilty plea, all eight original felony charges are back on the table. If he chooses not to move to withdraw and instead takes advantage of the plea agreement, which resulted in the dismissal of five serious charges, he will have to accept the de minimis challenged part of his sentence calling for $237 in fines and the production of a DNA sample. *See id.*

**Reversed and remanded.**