# IN THE COURT OF APPEALS OF IOWA

No. 15-0451
Filed June 15, 2016

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**ANTHONY ANGEL ZARATE,**
        Defendant-Appellant.

_____

        Appeal from the Iowa District Court for Black Hawk County, Todd A. Geer,

Judge.


        Anthony Zarate challenges the sentence imposed following a resentencing

hearing, contending the court did not apply all the proper sentencing factors

enunciated concerning youthful offenders.  **SENTENCE VACATED AND CASE

REMANDED.**


        Michael B. Oliver of Oliver Gravett Law Firm, P.C., Windsor Heights, for

appellant.

        Thomas J. Miller, Attorney General, and Linda J. Hines, Assistant Attorney

General, for appellee.


        Considered by Danilson, C.J., and Mullins and McDonald, JJ.

**DANILSON, Chief Judge.**

Anthony Zarate challenges the sentence imposed following a resentencing hearing, contending the court did not properly apply the principles recently enunciated concerning youthful offenders. Because the district court did not consider all the relevant factors, it failed to properly exercise its discretion. We therefore vacate his sentence and remand for further proceedings.

**I. Background Facts and Proceedings.**

In 2011, Anthony Zarate was convicted of five counts of first-degree robbery for offenses committed when he was seventeen years old. He was sentenced to concurrent terms not to exceed twenty-five years with a seventy percent mandatory minimum. All but one of those convictions was set aside on appeal. *See State v. Zarate*, No. 11-0530, 2012 WL 652449, at *11 (Iowa Ct. App. Feb. 29, 2012).

Zarate was serving a twenty-five-year sentence when, in January 2015, he filed a motion to be resentenced under *State v. Lyle*, 854 N.W.2d 378 (Iowa 2014).[1] An updated presentence investigation report (PSI) was prepared, and a hearing was held on Zarate's motion. At the resentencing hearing, the district court judge discussed several factors in deciding an appropriate sentence for Zarate, including the nature of the offense, the defendant's age at the time of the offense, the manner in which the offense was committed, and the prospects of rehabilitation. The court reaffirmed the twenty-five-year sentence with a

---

[1] In *Lyle*, 854 N.W.2d at 403, the Iowa Supreme Court found that all mandatory minimum sentences imposed upon juveniles without consideration of individualized sentencing factors were unconstitutional and required the case to be remanded for a resentencing hearing.

mandatory minimum previously imposed. Zarate now appeals, contending the district court "failed to fully address all of the relevant factors and neglected important considerations regarding Zarate's age and circumstances at the time of the offense."

## II. Scope and Standard of Review.

Where the claim raised by an appellant is that the district court failed to consider any of the required factors or considered any of the required mitigating factors to be aggravating, then the sentence imposed has been the product of a defective sentencing proceeding, which is unconstitutional. *See State v. Lyle*, 854 N.W.2d 378, 402-04 (Iowa 2014); *see also State v. Seats*, 865 N.W.2d 545, 553 (Iowa 2015) (stating "we have begun to decide cases involving constitutional attacks on the validity of a sentence" and "[w]hen a defendant attacks the constitutionality of a sentence, our review is de novo").

However, where the appellant attacks the legality of the sentence on nonconstitutional grounds, our review is for errors at law. *Seats*, 865 N.W.2d at 553. If the claim is that the district court has imposed a sentence within the statutory limits and considered all the required factors but the appellant challenges with the sentence imposed nonetheless, then our review is for an abuse of discretion. *See id.* at 552-53 (noting "a district court did not abuse its discretion if the evidence supports the sentence").

## III. Discussion.

A flurry of sentencing cases have been handed down in the last few years by the United States Supreme Court and our supreme court. A summary of these cases alleging cruel and unusual sentences has been well documented in

our case of *State v. Tuecke*, No. 15-0617, 2016 WL 1681524, at *3-8 (Iowa Ct. App. Apr. 27, 2016). We need not repeat it here.

The posture of this case requires us to review a resentencing decision to determine if, after an individualized sentencing hearing, the court properly applied the *Miller* factors.[2] Zarate was a juvenile when he committed his crimes and was granted such a hearing. Ultimately, the district court again imposed a mandatory-minimum seventy percent for the offense of first-degree robbery.

Recent precedent requires that a juvenile offender be given individualized sentencing consideration. *See State v. Null*, 836 N.W.2d 41, 52-56 (Iowa 2013) (providing an overview of juveniles, legal responsibility, and diminished culpability). An individualized sentencing hearing requires the court to consider several factors:

> (1) the "chronological age" of the youth and the features of youth, including "immaturity, impetuosity, and failure to appreciate risks and consequences"; (2) the "family and home environment" that surrounded the youth; (3) "the circumstances of the . . . offense, including the extent of [the youth's] participation in the conduct and the way familial and peer pressures may have affected [the youth]"; (4) the "incompetencies associated with youth—for example, [the youth's] inability to deal with police officers or prosecutors (including on a plea agreement) or [the youth's] incapacity to assist [the youth's] own attorneys"; and (5) "the possibility of rehabilitation."

*State v. Ragland*, 836 N.W.2d 107, 115 n.6 (Iowa 2013).

Additionally, our supreme court has stated that the purpose of an individualized sentencing hearing is for the court to "undertake an analysis of 'everything the United States Supreme Court said in *Roper* and *Graham*' about youth." *Null*, 836 N.W.2d at 74 (citation omitted). The trial court "must recognize

---

[2] *Miller v. Alabama*, 132 S. Ct. 2455 (2012).

that because children are constitutionally different from adults, they ordinarily cannot be held to the same standard of culpability as adults in criminal sentencing." *Id.* The court must also recognize that "juveniles are more capable of change than are adults and that as a result, their actions are less likely to be evidence of irretrievably depraved character." *Id.* at 75. "At the same time, it bears emphasis that while youth is a mitigating factor in sentencing, it is not an excuse." *Id.*

More recently, in *Seats*, the court explained further:

> In sentencing the juvenile offender, the court must take into account any information in the record regarding "the family and home environment that surrounds him—and from which he cannot usually extricate himself—no matter how brutal or dysfunctional." In examining the "family and home environment," the judge shall consider any information regarding childhood abuse, parental neglect, personal and family drug or alcohol abuse, prior exposure to violence, lack of parental supervision, lack of an adequate education, and the juvenile's susceptibility to psychological or emotional damage. The sentencing judge should consider these family and home environment vulnerabilities together with the juvenile's lack of maturity, underdeveloped sense of responsibility, and vulnerability to peer pressure as mitigating, not aggravating, factors.
> . . . .
> Finally, the sentencing judge must take into consideration that "[j]uveniles are more capable of change than are adults" and that as a result, "their actions are less likely to be evidence of 'irretrievably depraved character.'" . . . It is very difficult for a judge to distinguish between "'the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption.'"

865 N.W.2d at 556 (citations omitted).

In addition, we are guided by the recent decision of *Lyle*, 854 N.W.2d at 402. There our supreme court noted that judges are not prohibited from sentencing juveniles to prison for the length of time identified by the legislature

for the crime committed, and the legislature is not prohibited from imposing a minimum time that youthful offenders must serve in prison before being eligible for parole. *Lyle*, 854 N.W.2d at 402. But, the sentencing court is to "consider all the circumstances of each case to craft an appropriate sentence and give each juvenile the individual sentencing attention they deserve and our constitution demands." *Id.* The relevant sentencing factors were summarized:

> Under article I, section 17 of the Iowa Constitution, the portion of the statutory sentencing schema requiring a juvenile to serve seventy percent of the period of incarceration before parole eligibility may not be imposed without a prior determination by the district court that the minimum period of incarceration without parole is warranted under the factors identified in *Miller* and further explained in *Null*.

*Id.* at 404 n.10 (citations omitted) (emphasis added).

The sole issue in this case is whether the district court properly applied the factors enumerated in *Lyle* when it reaffirmed Zarate's sentence.

But then in the case of *State v. Sweet*, ___ N.W.2d ___, ___ , 2016 WL 3023726, at *29 (Iowa 2016), the supreme court adopted a categorical rule that juvenile offenders may not be sentenced to life without the possibility of parole under article 1, section 17 of the Iowa Constitution. In reaching this conclusion, the supreme court decimated the use of the *Miller* factors, describing one factor as "not . . . very helpful," *Sweet*, 2016 WL 3023726 at *27, and another factor "fraught with risks." *Id.*, 2016 WL 3023726 at *28. Ultimately, the court stated the *Miller* factors cannot be applied in any principled way—at least as it pertains to whether parole eligibility should be granted for a juvenile defendant facing a life sentence.

Unfortunately, the principles in *Lyle*, requiring the application of the *Miller* factors to determine if a mandatory-minimum sentence should be imposed upon a juvenile offender serving or required to serve a term of years, were not overruled in *Sweet*. Therein lies our dilemma. Do we follow the principles of *Lyle*, or conclude the principles of *Lyle* have been completely eroded by the decision in *Sweet*?

We conclude the resolution of this question has been best answered in *Agostini v. Felton*, 521 U.S. 203 (1997). In *Agostini*, the United States Supreme Court stated,

> We do not acknowledge, and we do not hold, that other courts should conclude our more recent cases have, by implication, overruled an earlier precedent. We reaffirm that "[i]f a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions."

521 U.S. at 237 (alteration in original) (citing *Rodriguez de Quijas v. Shearson*, 490 U.S. 477, 484 (1989)).

Our supreme court has said much the same in stating,

> Yet it is the prerogative of this court to determine the law, and we think that generally the trial courts are under a duty to follow it as expressed by the courts of last resort, as they understand it, even though they may disagree. If our previous holdings are to be overruled, we should ordinarily prefer to do it ourselves.

*State v. Eichler*, 83 N.W.2d 576, 578 (Iowa 1957).

Because *Lyle*, as well as *State v. Pearson*, 863 N.W.2d 88, 95-97 (Iowa 2013), a similar case involving a juvenile offender facing a mandatory-minimum

sentence, have not been overruled and directly control the issue before us, we remain bound by the principles of *Lyle*.

Upon our review of the circumstances in this case, we note the court stated it considered the serious nature of the offense—first-degree robbery using a weapon and placing "other individuals in fear and in great danger"—that while Zarate was a young person, he was "definitely old enough to know better." The court also observed, "I remember your case very well, and looking at the manner and severity of the crime . . . it was very severe and very clearly a serious first-degree robbery, and you were a primary factor in the commission of that offense." The court considered further that "there was a great deal of planning that was involved in orchestrating the crime," which included accumulating guns. The court also discussed the "prospects of rehabilitation," giving Zarate credit for taking the positive steps of obtaining his high school equivalency diploma and completing programming offered to him but also noting "disciplinary events" that had occurred while imprisoned. The district court let the original sentence stand.

While the factors discussed are certainly pertinent to the sentencing decision, there is no indication the district court specifically addressed several of the concerns noted in *Ragland*, *Seats*, and *Lyle*. For example, the court makes no mention of Zarate's family and home environment, which included growing up in an area of California rife with crime and gang activity; Zarate's own gang involvement that began at age eleven; the essential absence of his father, who was an undocumented immigrant with substance abuse issues; his mother's attempts to move her children to different environments; and Zarate's early onset of substance abuse. *See Seats*, 865 N.W.2d at 556; *Ragland*, 836 N.W.2d at

115 n.6. Nor does the district court discuss "all circumstances relating to youth that may have played a role in the commission of the crime," or "the challenges for youthful offenders in navigating through the criminal process." *Lyle*, 854 N.W.2d at 404 n.10. A failure to contemplate these pertinent factors requires that we vacate. *See State v. Hildebrand*, 280 N.W.2d 393, 396 (Iowa 1979) (stating that where a court is required to exercise discretion, "[a]ny such determination has long been recognized as requiring an actual exercise of judgment upon the part of the court" and "[t]o do so necessitates a consideration by the court of the facts and circumstances which are necessary to make a sound, fair, and just determination" (citation omitted)). We therefore vacate Zarate's sentence and remand for further proceedings.

**SENTENCE VACATED AND CASE REMANDED.**